CRAWLEY, Presiding Judge.
In June 2003, Francina Morales was injured when she was struck by an automobile driven by Robert Shorter. In February 2004, Morales sued Shorter, seeking a total of $175,000 in damages; she also sued Safeway Insurance Companies of Alabama, Inc., Shorter’s insurance company, alleging bad-faith refusal to pay her claim. Safeway was later dismissed as a defendant, and Shorter died during the course of the litigation, resulting in the substitution of Luneal Barnett, as administrator of the estate of Robert Shorter, as a defendant. After a jury trial, at which the jury assessed Morales’s damages at $35,000, the trial court entered a judgment in favor of Morales for the entire $35,000 after denying Barnett’s motion for a setoff of a $20,000 settlement Morales had received from her insurer, GEICO, pursuant to the underinsured-motorist provisions of her policy. Barnett requested that the trial court reconsider his request for a setoff, and the trial court subsequently amended the judgment by reducing the amount of the judgment by the $20,000 settlement. Morales appeals.
As a basis for reducing the amount of the judgment, the trial court relied on Batchelor v. Brye, 421 So.2d 1267 (Ala.Civ.App.1982), in which this court permitted an insured tortfeasor to partially satisfy a judgment against both him and an uninsured tortfeasor with the uninsured-motorist benefits received by the plaintiff from his insurer. Morales admits that Batche-lor appears to be authority for the trial court’s amended judgment. However, she argues that we should either distinguish Batchelor or overrule it.
We will begin our consideration of whether uninsured/underinsured-motorist benefits paid to a plaintiff should be set off against a judgment the plaintiff secures against a tortfeasor with a discussion of the holding in Batchelor. Archie Batche-lor, as administrator of the estate of his deceased son, sued Charles Dienhelt and *724 Hattie Mae Brye, alleging that their negligence resulted in the death of Batchelor’s son. Batchelor, 421 So.2d at 1268. Dien-helt was insured; Brye was not. Id. Batchelor also sued his insurer, State Farm Mutual Auto Insurance Company, seeking uninsured-motorist benefits. Id. State Farm and Batchelor entered into a settlement whereby State Farm paid Batchelor $10,000 pursuant to the uninsured-motorist provision of his policy. Id.
After a jury trial to determine Dien-helt’s and Brye’s liability, at which the jury determined Batchelor’s damages to be $30,000, the trial court entered a judgment on the verdict. Id. Dienhelt paid $20,000 into court and “moved to have [the entire judgment] satisfied.” Id. The trial court granted this motion, and Batchelor appealed. Id.
In affirming the trial court’s order permitting the judgment to be satisfied by Dienhelt’s $20,000 payment, the Batchelor court relied on principles of law regarding the goal of uninsured-motorist coverage, which the court stated was “to make the plaintiff whole but not to allow double recovery.” Id. at 1269. The court based its conclusion that a “plaintiff is never entitled to recover from any source more than the actual measure of damages,” id., on its consideration of the holdings of Safeco Insurance Co. v. Jones, 286 Ala. 606, 243 So.2d 736 (1970), and Alabama Farm Bureau Mutual Casualty Insurance Co. v. Clem, 49 Ala.App. 457, 273 So.2d 218 (1973).
In Jones, the supreme court considered whether the plaintiffs uninsured-motorist carrier could deny coverage to the plaintiff under an exclusion in its policy whereby the insurer'attempted to limit its liability in those instances when other insurance was available to the insured. Jones, 286 Ala. at 609, 243 So.2d at 738. The plaintiff in Jones had secured a $25,000 judgment against an uninsured motorist and had recovered $10,000 under the uninsured-motorist provision of a policy held by the driver of the vehicle in which he had been a passenger. Jones, 286 Ala. at 610, 243 So.2d at 738. The plaintiff then sought $10,000, the limits of his uninsured-motorist coverage, from his insurer; the insurer denied his claim based on the exclusion. Id. After the plaintiff successfully sued the insurer, the insurer appealed, arguing that the other-insurance exclusion applied. Id.
The supreme court struck down the other-insurance exclusion, stating:
“We hold that our statute sets a minimum amount for recovery, but it does not place a limit on the total amount of recovery so long as that amount does not exceed the amount of actual loss; that where the loss exceeds the limits of one policy, the insured may proceed under other available policies; and that where the premiums have been paid for uninsured motorist coverage, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which restricts the insured from receiving that coverage for which the premium has been paid.
“This holding does not permit a recovery in excess of that amount to which the injured party was ‘legally entitled to recover’ by virtue of the judgment against the uninsured motorist. By this latter statement, we do not consider that we are amending or adding to the statute. The statute limits recovery of damages to that amount to which the injured party is ‘legally entitled to recover’ and that amount is legally settled prior to the claims under the statute and the policies.”
Jones, 286 Ala. at 614, 243 So.2d at 742. The Jones court was not presented with the issue whether the plaintiffs receipt of *725 $10,000 in uninsured-motorist benefits should be set off against the $25,000 judgment against the tortfeasor.
Similarly, Clem involved not the issue whether a tortfeasor could set off an uninsured-motorist insurance payment against a damages award but whether, by virtue of a provision in the plaintiffs policy requiring the insurer’s consent to settlement, the insurer could refuse to pay the plaintiff uninsured-motorist benefits after the plaintiff had settled for a total of $10,000 in insurance benefits from another insurance company for the death of his wife, who had been a passenger in a vehicle driven by the other insurance company’s insured when that vehicle was struck by an uninsured motorist. Clem, 49 Ala.App. at 460, 273 So.2d at 220. After securing the settlement from the insured motorist, the plaintiff then sought his insurer’s permission to sue the uninsured motorist, which his insurer granted; the plaintiff secured a $39,300 judgment against the uninsured motorist. Id. The plaintiffs insurer refused to pay the plaintiff the $10,000 in uninsured-motorist benefits provided under the plaintiffs policy because the plaintiff had not sought and received its consent to settle with the insured motorist as required by the provisions of the plaintiffs policy. Id.
The Clem court determined that the provision requiring that an insured seek approval of a settlement with an insured motorist as a prerequisite to the receipt of uninsured-motorist benefits under his own policy was a method of limiting an insurer’s liability under the policy and was not permissible under the uninsured-motorist statute. Clem, 49 Ala.App. at 461, 273 So.2d at 221. Relying in part on Jones, the court remarked that “[t]he Supreme Court in [Jones ] held in effect that the insured with uninsured motorist coverage was entitled to recover from whatever source available up to his amount of loss.” Id. Thus, the Clem court invalidated the portion of the provision requiring that an insured seek approval of a settlement with an insured tortfeasor as a prerequisite to recovery of uninsured-motorist benefits under his policy. Clem, 49 Ala.App. at 461-62, 273 So.2d at 222.
The Batchelor court used the principles espoused in Jones and Clem regarding the purpose of uninsured-motorist coverage, i.e., to make an insured plaintiff whole up to the amount of his loss, as one basis for its conclusion that the uninsured-motorist benefits already paid to the plaintiff in Batchelor should be set off against the amount of the damages award so that the plaintiff would not recover any more than the amount of his loss. Batchelor, 421 So.2d at 1269. However, Jones and Clem concerned the question whether an insurer could escape liability for uninsured-motorist coverage under a certain exclusion, which, based on the purpose of the uninsured-motorist statute, was answered in the negative. Neither Jones nor Clem involved the question whether an injured plaintiff or the tortfeasor should receive the benefit of the uninsured-motorist benefits to which the plaintiff was entitled.
In addition, a second legal principle is pivotal to the Batchelor holding. The Batchelor court also premised its holding on the fact that “[wjhile the plaintiff is entitled to full compensation for his injuries, he is entitled to only one satisfaction.” Batchelor, 421 So.2d at 1269 (citing Williams v. Colquett, 272 Ala. 577, 582, 133 So.2d 364, 368 (1961)). A reading of Williams reveals that this principle is mentioned at the outset of a discussion of the joint and several liability of joint tort-feasors in which it is explained that a plaintiff “injured by two or more joint tort-feasors may accept partial satisfaction and release one or more pro tanto and continue *726 to proceed against one or more of the others” but that if the plaintiff “recovers judgment against one of the joint tort-feasors and obtains satisfaction, this operates as a discharge of the others.” Williams, 272 Ala. at 582, 133 So.2d at 368.
Batchelor involved two tortfeasors — one insured, the other uninsured. The plaintiff in Batchelor sued both tortfeasors and, during the litigation, entered into a pro tanto settlement with his own insurer for uninsured-motorist benefits. Thus, the rule stated in Williams had application in Batchelor, as the court itself recognized when it explained:
“Though the jury, without knowledge of the plaintiffs settlement with State Farm, ... found the plaintiffs damages to be $30,000, the plaintiff had already received one-third of that amount from his insurer due to the liability of Brye.
“Since the plaintiff received $10,000 due to the negligence of one tort-feasor, the $30,000 judgment was satisfied by payment of the remaining $20,000 by the other tort-feasor.”
Batchelor, 421 So.2d at 1269.
Our supreme court has continued to espouse the longstanding principle that a plaintiff is entitled to only one recovery for any single injury caused by two or more joint tortfeasors. See, e.g., Shepherd v. Maritime Overseas Corp., 614 So.2d 1048 (Ala.1993); Cooper v. Aplin, 523 So.2d 339 (Ala.1988); Ex parte Rudolph, 515 So.2d 704 (Ala.1987); and Williams v. Woodman, 424 So.2d 611 (Ala.1982). The court reaffirmed this principle in Ex parte Goldsen, 783 So.2d 53, 55 (Ala.2000), in which it addressed the issue whether the damages assessed against a negligent defendant could be offset by a pro tanto settlement with a defendant who the jury determined was not negligent. The supreme court answered that question in the affirmative, basing its decision on the rule that “ ‘a plaintiff ... is entitled to only one recovery for a single injury caused by two or more tortfeasors.’” Ex parte Goldsen, 783 So.2d at 56 (quoting Shepherd v. Maritime Overseas Corp., 614 So.2d at 1051). In considering the issue, the court specifically rejected the argument that the non-settling defendant would receive a windfall if the settlement were set off against the damages award. Ex parte Goldsen, 783 So.2d at 56. Instead, the court determined that the nonsettling defendant was “simply paying the portion of the damages owed to the plaintiff that remains after the settlement.” Id. Thus, the negligent defendant was allowed to reduce the damages award by the amount of the settlement between the plaintiff and the non-negligent defendant. Id. at 57.
We conclude, therefore, that Batchelor was premised, in large part, on the rule that a plaintiff is allowed only one recovery for a single injury caused by two or more tortfeasors. Indeed, although the purpose underlying uninsured-motorist benefits is to provide a recovery up to the amount of loss to plaintiffs injured by underinsured or uninsured motorists, it is important to note the interplay of that legal principle with the fact that Batchelor involved joint tortfeasors and thus implicated the legal principle that one joint tortfeasor may offset damages assessed for joint negligence by the amount of a pro tanto settlement entered into by another tortfeasor. Thus, we conclude that the holding in Batchelor has no application in the present case because Morales was injured by only one tortfeasor — Shorter. We now turn to whether, as urged by Morales, the collateral-source rule precludes the setoff that was permitted by the trial court.
As noted in Ensor v. Wilson, 519 So.2d 1244, 1266 (Ala.1987), our supreme court, in Gribble v. Cox, 349 So.2d 1141, 1142 (Ala.1977), adopted the collateral-source rule as it is stated in 22 Am.Jur.2d, Damages, § 206:
*727 “ ‘ “... [A]s a general rule, the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, will not be taken into account in computing damages.
(Emphasis in Ensor omitted.) When it extended the rule to include Medicare payments, likening them to insurance payments, the court restated the general rule thusly: ‘“The collateral source doctrine ... provides that damages recoverable for a wrong are not diminished because the injured party has been wholly or partially indemnified or compensated for his loss by insurance effected by him and to which the wrongdoer did not contribute Mitchell v. Moore, 406 So.2d 347, 351 (Ala.1981) (quoting Powell v. Brady, 30 Colo.App. 406, 414, 496 P.2d 328, 332-33 (1972)). We note that the collateral-source rule has been abrogated in limited instances by our legislature. See Ala.Code 1975, § 12-21-45-(making evidence that a plaintiffs medical or hospital expenses have been paid or will be reimbursed admissible in civil tort cases), Ala.Code 1975, § 6-5-522 (making evidence that a “plaintiffs medical or hospital expenses have been or will be paid or reimbursed (1) by medical or hospital insurance, or (2) pursuant to the medical and hospital payment provisions of law governing workmen’s compensation” admissible in products-liability cases), and Ala.Code 1975, § 6-5-545 (making evidence that a plaintiffs medical or hospital expenses have been paid or will be reimbursed admissible in medical-malpractice cases). However, those provisions are not applicable in the present case.
“The courts of this state have held many times that what has occurred between in-suror and insured is of no concern to the defendant — that the sum received from insurance cannot be shown in mitigation of damages for the injury.” Jones v. Crawford, 361 So.2d 518, 522 (Ala.1978) (footnote omitted). Our supreme court has also stated that it is “committed to the rule of exclusion of collateral source payments.” Gribble, 349 So.2d at 1143. On the basis of the collateral-source rule, the courts have excluded evidence of insurance payments, Carlisle v. Miller, 275 Ala. 440, 444, 155 So.2d 689, 691 (1963); Medicare payments, Mitchell, 406 So.2d at 351; and public benefits like special-education opportunities provided by the state, Ensor, 519 So.2d at 1267.
We see no reason to distinguish uninsured-motorist benefits from other insurance benefits and payments provided from other sources that have typically been excluded from damages computations under the collateral-source rule. Thus, we conclude that the collateral-source rule prohibits the reduction of Morales’s damages award by the amount of Morales’s uninsured-motorist benefits. The judgment of the trial court reducing Morales’s damages is reversed, and the cause is remanded for the trial court to reinstate its original judgment entered on the jury’s verdict.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, PITTMAN, and BRYAN, JJ., concur.'
MURDOCK, J., concurs in part and dissents in part as to the rationale and concurs in the result.